# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**PATRICIO ESQUIVEL,**

      **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　　　　　　　**No. 96cv1108 BB/JHG**

**SGT. KRIS HENIGMAN, JOSEPH SENA,
ANGEL GARCIA, JOHN SHANKS,
NEW MEXICO DEPARTMENT OF
CORRECTIONS, SIX UNKNOWN AGENTS,
and WILLIAM BRADY,**

      **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      This matter is before the Court on Defendant's Martinez Report, or Alternatively, Motion for Summary Judgment, filed November 16, 1998, herein construed as a motion for summary judgment. On October 3, 1996, the assigned United States District Judge referred this matter to the undersigned United States Magistrate Judge to submit proposed findings of fact and recommendation for disposition of this motion pursuant to 28 U.S.C. § 636(b)(1)(C). The United States Magistrate Judge, having considered the arguments, pleadings, relevant law, and being otherwise fully informed, finds the motion is not well-taken and recommends it be DENIED.

**I. Background**

      On August 12, 1996, Esquivel, then a *pro se* litigant, filed his original complaint pursuant to 42 U.S.C. §1983. On December 1, 1996, the district court granted Esquivel *in forma pauperis* status. In reviewing the complaint pursuant to 28 U.S.C. § 1915, the district court ordered Esquivel to file an amended complaint presenting specific facts tending to show instruction, agreement, or concerted

action by specific defendants, and identifying the defendants who participated in the alleged attack.

In his amended complaint filed December 18, 1996, Esquivel alleged that Henigman attacked him, while he was handcuffed, and caused physical injuries in violation of the Eighth Amendment proscription against cruel and unusual punishment. Esquivel seeks a declaration that Henigman violated his rights, compensatory damages, and punitive damages under 42 U.S.C. § 1983.

On January 10, 1997, the district court dismissed the claims against the New Mexico Department of Corrections, Angel Garcia, John Shanks, Joseph Sena, and William Brady for failure to state a claim because the complaint failed to allege their direct involvement in the altercation. The district court also allowed Esquivel a reasonable time in which to identify the six unknown agents. On July 17, 1998, the district court dismissed the claims against the six unknown agent defendants due to Esquivel's failure to identify them within a reasonable period of time.

**II. Standard of Review**

This Court liberally construes *pro se* litigants' pleadings and holds them to a less stringent standard than required of those prepared by a lawyer. *Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989). At the same time, the Court may not assume the role of advocate for the *pro se* litigant, and need not accept as true unsupported conclusory allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A motion for summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact . . . " *Id.* When applying this standard, the Court examines the record and resolves all reasonable

2

inferences in the light most favorable to the non-moving party. *Universal Money Centers v. AT&T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655 (1994).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1355 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1593 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to present enough evidence to allow a reasonable jury to find for the non-moving party. *Orback v. Hewlett-Packard Co.,* 97 F.3d 429, 432 (10th Cir. 1996).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *Universal Money Centers v. AT&T*, 22 F.3d at 1529. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586, 106 S.Ct. at 1356. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *Universal Money Centers v. AT&T,* 22 F.3d at 1529. The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to defeat a properly supported motion for summary judgment. *Id.*

**III. Discussion**

Esquivel brought this action under 42 U.S.C. § 1983, which provides civil redress for deprivation of constitutional rights. Section 1983 was enacted to provide protection to those persons wronged by the misuse of power. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980). It creates no substantive civil rights, only a procedural mechanism for enforcing them. *Gallegos v. City &County of Denver*, 984 F.2d 358, 362 (10th Cir.), *cert. denied*, 508 U.S. 972, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993).

Henigman contends he is entitled to summary judgment because he did not use excessive force against Esquivel.[1] The United States Supreme Court has held that whenever prison officials stand accused of using excessive physical force in violation of the cruel and unusual punishment clause, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillan*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In order to determine whether the force used by an official was wanton and unnecessary, the court should consider the extent of the injury, the need for the force, the relationship between the need and the amount of force, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillan*, 503 U.S. at 7, 112 S.Ct. at 999 (*citing Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)).

On May 16, 1996, at the Penitentiary of New Mexico, prison officials ordered a shakedown of the south unit in response to a suspicious physical injury suffered by an inmate unrelated to this suit. Defendant's Martinez Report, or Alternatively, Motion for Summary Judgment, filed November 16, 1998, (Martinez Report) Exhibits, A, B, C, and D. Corrections officers searched, handcuffed, and

---

[1] Defendants do not argue they are entitled to qualified immunity.

4

removed each inmate from his cell so each cell could be searched. Martinez Report, Exhibits A, B, C, and D.

While the inmates were outside their cells, they were required to stand silently facing a wall. Martinez Report, Exhibits B, C, D, and G. Henigman was assigned to guard Esquivel while he was facing the wall. Martinez Report, Exhibit G. During this period, Esquivel sustained physical injuries which required medical attention. Martinez Report, Exhibits L, M, and R.

The medical records indicate Esquivel sustained a laceration above his right eye, secondary to hitting his head against a wall. Martinez Report, Exhibit R. Esquivel initially refused stitches at the prison infirmary, but was later transported to St. Vincent's Hospital where the laceration was sutured. Martinez Report, Exhibits R and S. Esquivel later complained of head and upper back pain and was provided a cervical collar. Martinez Report, Exhibit W. A June 3, 1996 X-ray revealed mild degenerative changes, but no acute abnormalities. Martinez Report, Exhibit V.

The May 16, 1996 lockdown resulted in injuries to several inmates, in addition to Esquivel. Martinez Report, Exhibit E. At the request of counsel representing the inmates in connection with the *Duran* consent decree, the incident was investigated by the Special Master appointed pursuant to that decree. Martinez Report, Exhibits E and M. The Special Master concluded the use of force was contrary to policy, unnecessary, and excessive. Martinez Report, Exhibit M at 3. The Special Master also stated he was left with the "firm conviction" the "incident had a good deal more to do with the staff's psychological aggressiveness then with any legitimate threat to staff or to the institution." Exhibit M at 4.

In addition, Select Organizational & Administrative Resource Services (SOARS) prepared a report for the New Mexico Risk Management Division. Martinez Report, Exhibit N. The SOARS

5

investigator noted a "source of concern" was the "level of force escalation" against Esquivel who was standing facing away from the corrections officer, with his hands cuffed behind his back, and with other officers readily available to assist in removing or restraining him. Martinez Report, Exhibit N at 7. While the investigator concluded the degree of force used was justified, he did note Esquivel contradicted Henigman's version of the incident. Martinez Report, Exhibit N at 8. The May 16, 1996 lockdown also gave rise to at least one other federal law suit, *Herrera v. Sena*, 97cv0673 JP/LCS, which was dismissed on January 16, 1998.

The material facts regarding what actually transpired immediately prior to and during the altercation are disputed by the parties. Henigman contends Esquivel refused several direct orders to face the wall, became verbally abusive, and started to turn around in a physically combative manner. Martinez Report, Exhibits G, H, and I. In response to this perceived threat, Henigman stated he placed his right hand on Esquivel's upper back area and pushed him to the blacktop with the assistance of Sgt. Brady. Martinez Report, Exhibit G. Henigman's version is supported by his own reports and those of Sgt. Brady. Martinez Report, Exhibits G, H, I, and J.

Esquivel, however, disputes Henigman's version. Esquibel asserts he did not say anything, or try to turn away from the wall. Plaintiff's Response to Defendant's Martinez Report, or Alternatively, Motion for Summary Judgment filed January 8, 1999, (Response) Exhibit A at 2. Henigman placed a great deal of pressure on his upper back, let up on the pressure, and then slammed him against the wall. Response, Exhibit A at 2. Esquibel went down on his left knee, and felt someone step on the back of his leg. *Id.* Esquivel avers he was hit on his right eye by a fist or elbow, was pulled by other hands, felt a blow to the top of his ear, could see four officers kicking at him, and tried to roll himself into a ball to protect himself while he continued to be struck. *Id.*

6

In support of his version of events, Esquivel submitted his own affidavit as well as the affidavits of inmates Manuel Montano and Julian Fuentes, who were present at the time of the incident. Response, Exhibits A, B, and C. The affidavits of Montano and Fuentes substantially support Esquivel's version, and contradict Henigman and Brady's version, of the events. Response, Exhibits B and C.

Viewing the material evidence in a light most favorable to Esquivel, a fact-finder could reasonably find the force in this case was not applied in a good faith effort to maintain or restore discipline, but was inflicted maliciously and sadistically to cause harm. *Hudson v. McMillan*, 503 U.S. at 7, 112 S.Ct. at 999, 117 L.Ed.2d at ____. Under these circumstances, summary judgment would not be appropriate.

Upon review of the evidence presented in the Martinez Report, herein construed as a motion for summary judgment, the United States Magistrate Judge finds material facts are in dispute as to whether Henigman used excessive force against Esquivel in violation of the Eighth Amendment on May 16, 1996. Therefore, Defendant's Martinez Report, or Alternatively, Motion for Summary Judgment, filed November 16, 1998, should be denied.

### RECOMMENDED DISPOSITION

Defendant's Martinez Report, or Alternatively, Motion for Summary Judgment filed November 16, 1998 should be DENIED.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

# NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.